UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JORDAN KLEMONS,                                          :

                Plaintiff,                     :          OPINION & ORDER

      -v.-                                      :
                                                                    20 Civ. 8326 (GWG)
KILOLO KIJAKAZI, COMMISSIONER,              :
SOCIAL SECURITY ADMINISTRATION,

                                   :
               Defendant.
------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Plaintiff Jordan Klemons brings this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of the final decision of the Commissioner of Social Security (the

"Commissioner") denying his claim for Disability Insurance Benefits under the Social Security

Act ("the Act"). Both parties have moved for judgment on the pleadings pursuant to Fed. R. Civ.

P. 12(c).[1] For the reasons set forth below, the Commissioner's motion is granted.

I.      BACKGROUND

      A.    Procedural History

      On June 15, 2016, Klemons filed an application for disability insurance benefits, alleging

disability beginning March 18, 2016. See SSA Administrative Record, filed June 11, 2021

(Docket # 17) ("R."), at 78, 233. Klemons' application was denied on February 6, 2017, see R.

78-85, 89, after which Klemons requested a hearing before an administrative law judge ("ALJ"),

---

[1] See Plaintiff's Motion for Judgment on the Pleadings, filed Oct. 7, 2021 (Docket # 26);
Plaintiff's Memorandum of Law in Support, filed Oct. 7, 2021 (Docket # 27) ("Pl. Mem.");
Defendant's Cross Motion for Judgment on the Pleadings, filed Mar. 1, 2022 (Docket # 33);
Defendant's Memorandum of Law in Opposition to Plaintiff's Motion and in Support of Cross
Motion, filed Mar. 1, 2022 (Docket # 34) ("Def. Mem."); Plaintiff's Reply Memorandum, filed
Mar. 22, 2022 (Docket # 35) ("Pl. Reply").

see R. 105.  A hearing was held on May 31, 2019.  See R. 38.  In a written decision dated

September 3, 2019, the ALJ found that Klemons had been disabled from March 18, 2016 through

June 6, 2017, but medically improved and was no longer disabled beginning June 7, 2017.  See

R. 17-29.  Klemons requested a review by the Appeals Council, which was denied on August 4,

2020.  See R. 1.  On October 6, 2020, Klemons filed this action seeking review of the ALJ's

decision.  See Complaint, filed Oct. 6, 2020 (Docket # 1).

      B.      The Hearing Before the ALJ

      The hearing was held in New York, New York.  See R. 38.  Klemons and his counsel

appeared in person.  See id.  Vocational Expert ("VE") Pat Green and Medical Expert Dr. Steven

Goldstein also testified at the hearing.  See R. 38, 55-66, 71-75.

      At the hearing, Klemons testified that he was self-employed and offered guitar lessons

over the internet.  See R. 43-45.  Previously, Klemons taught guitar at New York University and

through a business he owned.  R. 69.  He also sporadically worked for a construction business,

performing both office work and construction work.  R. 70.  Klemons' highest level of education

is a master's degree in jazz studies.  See R. 43.

      Klemons testified that he lived alone in an apartment and was able to dress and bathe

himself.  See R. 43, 45.  Klemons sometimes performed household chores, but often was limited

by fatigue.  See R. 45-46.  Klemons reported that he spent his days going on outdoor walks or

playing music, but that fatigue limited these activities to brief periods of time.  R. 48.  Klemons

could shop by himself and use public transportation.  R. 46.

      Klemons testified that he often needed to nap during the day, taking up to two naps of

forty-five minutes to an hour.  R. 49.  Klemons often experienced headaches, ranging from one

to two per week to every day, and they could last an entire day.  R. 52-53.  Klemons also testified

that he had memory problems and relied on reminders to take his medication.  R. 53-54.

Klemons was previously diagnosed with Hodgkin's lymphoma, which was in remission

at the time of the hearing but which still required regular monitoring by oncologists.  R. 46-47.

Following Klemons' testimony, the ALJ questioned Dr. Goldstein.  See R. 55.  Dr.

Goldstein testified that, prior to June 2017, Klemons would have been able to sit for only 15-20

minutes at a time, and for a total of 2-3 hours per day.  R. 57-58.  Dr. Goldstein opined that,

during this time, due to Klemons' fatigue, he would not be able to sit, stand, or walk for a total of

8 hours in an 8-hour workday.  R. 64.  Dr. Goldstein testified that Klemons' symptoms gradually

improved, and that he was "functioning well" as of his June 6, 2017 examination.  R. 61.  Dr.

Goldstein found that, at the time of the hearing, Klemons could sit for 6 hours per day, up to 3

hours at a time, could stand and walk for 6 hours per day, up to 3 hours at a time, and could lift

10 pounds frequently and 20 pounds occasionally.  R. 58.  Dr. Goldstein estimated that Klemons

could be expected to miss less than one day of work per month.  R. 60.

Following Klemons' and Dr. Goldstein's testimony, the ALJ questioned the VE.  See R.

71.  Specifically, the ALJ inquired whether Klemons could perform his past work as a professor

instructor or musician if he were limited to sitting for a total of 6 hours per day and 3 hours at a

time, could stand and walk for a total of 6 hours per day and 3 hours at a time, could lift or carry

up to 20 pounds occasionally and 10 pounds frequently, and would have to avoid unprotected

heights, hazardous moving machinery, and climbing ladders, ropes, and scaffolds.  R. 72.  The

VE testified that Klemons would be able to perform his past work.  Id.  The ALJ then asked

whether Klemons would still be able to perform this past work if he were limited to unskilled

jobs but had the same exertional limitations; the VE replied that Klemons would not be able to

perform his past work.  Id.  The ALJ then asked the VE whether there were any jobs available

for a hypothetical individual with Klemons' vocational profile, with the exertional limitations set

forth above, and who was limited to unskilled light or sedentary work.  R. 73.  The VE identified

the jobs of final assembler (light work), packager (light), order clerk (sedentary) and stuffer

(sedentary).  Id.

       C.     The Medical Evidence

       Both Klemons and the Commissioner have provided detailed summaries of the medical

evidence.  See Pl. Mem. at 2-12; Def. Mem. at 3-9.  The Court had directed the parties to specify

any objections they had to the opposing party's summary of the record, see Scheduling Order,

filed June 14, 2021 (Docket # 18) ¶ 5, and neither party has done so.  Accordingly, we adopt the

parties' summaries of the medical evidence as accurate and complete for purposes of the issues

raised in this suit.  We discuss the medical evidence pertinent to the adjudication of this case in

Section III below.

       D.     The ALJ's Decision

       The ALJ issued a decision on Klemons' application on September 3, 2019.  See R. 29.

The ALJ determined that Klemons had been disabled from March 18, 2016 to June 6, 2017, but

was not disabled after June 6, 2017, because he had medically improved.  R. 25.  With respect to

the period of improvement, the ALJ assessed Klemons' residual functional capacity ("RFC"),

finding that he was able

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant
> can sit for six hours total, three hours at a time, and stand/walk for a total of six
> hours, three hours at one time.  He can lift and carry ten pounds frequently,
> twenty pounds occasionally.  He should avoid ladders, ropes, scaffolds and
> protected heights and hazardous moving machinery.

R. 25-26.  With respect to credibility, the ALJ found that Klemons' "medically determinable

impairments could reasonably be expected to produce the alleged symptoms; however,

[Klemons'] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  R. 26.

The ALJ then concluded that after June 6, 2017, Klemons was "capable of performing past relevant work as Professor/Instructor (DOT No. 090.227-010) light, skilled with an SVP of 8; Instruction Music (DOT No. 152.021- 010) light, skilled with an SVP of 7; [and] Musician (DOT No. 052.040-010) light, skilled with an SVP of 8."  R. 28.  As an alternative basis, the ALJ also found that jobs were available that Klemons could perform even if he were limited to unskilled and sedentary work.  See id.  Accordingly, the ALJ found that Klemons' disability ended on June 7, 2017, and that he had not become disabled again since that date.  R. 29.

II.     GOVERNING STANDARDS OF LAW

        A.      Scope of Judicial Review Under 42 U.S.C. § 405(g)

        A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (punctuation omitted).  Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence

supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454

(S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a

claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted);

accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).  Rather, substantial

evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)

(punctuation omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938));

accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008).  "It

means — and means only — such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019)

(punctuation omitted).  The "threshold for such evidentiary sufficiency is not high." Id.  The

Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts,

[a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise."

Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in

original, punctuation omitted).  "The role of the reviewing court is therefore quite limited and

substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d

at 454 (punctuation omitted).

B.      Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see id.

§ 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience.  See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must

review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work."  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is able to do such work, he or she is not disabled.  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot perform other work, he or she will be deemed disabled.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Regulations issued pursuant to the Social Security Act set forth a multi-step process that the Commissioner must use in deciding whether an individual already found disabled has undergone a "medical improvement" that enables the claimant to engage in substantial gainful activity.  See 42 U.S.C. § 423(f)(1); 20 C.F.R. § 404.1594.  The steps relevant to Klemons' case are as follows.  First, in evaluating the claim, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. § 404.1594(f)(1).  If the claimant is not engaged in substantial gainful activity, the Commissioner must determine if there has been a "medical improvement," as defined in the regulations, which is shown by a "decrease in medical severity."  Id. § 404.1594(f)(3).  If so, the Commissioner then determines whether there has been an increase in the residual functional capacity.  Id. § 404.1594(f)(4).  Where, as here, the Commissioner finds that a claimant's impairments are no longer severe, the Commissioner then determines whether the current impairments in combination are severe and what impact the combination of those impairments has on the claimant's ability to function.  Id.

§ 404.1594(f)(6).  If the evidence shows that the claimant's impairments in combination do not

significantly limit his ability to do basic work activities, these impairments will not be

considered severe in nature and the claimant will be found to no longer be disabled.  Id.  But if

the impairments are severe, the Commissioner assesses the claimant's ability to do substantial

gainful activity.  Id. § 404.1594(f)(7); see also id. § 404.1560.  That is, the Commissioner will

assess the claimant's residual functional capacity.  Id. § 404.1594(f)(7).  If the claimant is able to

perform past relevant work, the disability will be found to have ended.  Id.  If the claimant is not

able to do past relevant work, the Commissioner considers whether he can do other work given

the RFC assessment and the claimant's age, education, and past work experience.  Id. §

404.1594(f)(8).

      C.    Credibility Determinations

      "It is the function of the [Commissioner], not [the reviewing court], to resolve evidentiary

conflicts and to appraise the credibility of witnesses, including the claimant."  Carroll v. Sec'y of

Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (citing Perales, 402 U.S. at 399)

(additional citations omitted).  Thus, the ALJ, "after weighing objective medical evidence, the

claimant's demeanor, and other indicia of credibility . . . may decide to discredit the claimant's

subjective estimation of the degree of impairment."  Tejada v. Apfel, 167 F.3d 770, 776 (2d

Cir. 1999) (summarizing the holding of and citing with approval Pascariello v. Heckler, 621 F.

Supp. 1032, 1036 (S.D.N.Y. 1985)).  Nonetheless, when discounting a claimant's credibility

regarding his or her RFC, regulations impose some burden on the ALJ to explain his or her

decision.  As the Second Circuit has stated:

> When determining a claimant's RFC, the ALJ is required to take the claimant's
> reports of pain and other limitations into account, 20 C.F.R. § 416.929; see
> McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 704-05 (2d
> Cir. 1980), but is not required to accept the claimant's subjective complaints

without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.  Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

Genier, 606 F.3d at 49; see also 20 C.F.R. § 404.1529.  To evaluate a claimant's assertion of a limitation, the ALJ must engage in a two-step process:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529(b).  That requirement stems from the fact that subjective assertions of pain alone cannot ground a finding of disability.  20 C.F.R. § 404.1529(a).  If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record.  Id.  The ALJ must consider "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings."  20 C.F.R. § 404.1512(b)(3); see also 20 C.F.R. § 404.1529(a); S.S.R. 96-7p.

Genier, 606 F.3d at 49 (alterations and emphasis in original).

The SSA has issued regulations relating to reports of pain or other symptoms affecting a claimant's ability to work.  See 20 C.F.R. § 404.1529(c).  These regulations provide, inter alia, that the SSA "will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements."  Id. § 404.1529(c)(2).  The regulations also provide that the SSA "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence."  Id. § 404.1529(c)(4).

Where an ALJ rejects witness testimony as not credible, the basis for the finding "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing

Carroll, 705 F.2d at 643); accord Craig, 218 F. Supp. 3d at 263.  The ALJ must make this

determination "in light of medical findings and other evidence[] regarding the true extent of the

pain alleged by the claimant."  Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984)

(punctuation omitted) (quoting McLaughlin, 612 F.2d at 705).  However, where an ALJ gives

specific reasons for finding the claimant not credible, the ALJ's credibility determination "is

generally entitled to deference on appeal."  Selian, 708 F.3d at 420 (citing Calabrese v. Astrue,

358 F. App'x 274, 277 (2d Cir. 2009) (summary order)).  Thus, "[i]f the [Commissioner's]

findings are supported by substantial evidence, the court must uphold the ALJ's decision to

discount a claimant's subjective complaints."  Aponte v. Sec'y, Dep't of Health & Human

Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal citations omitted); see also 42 U.S.C. § 405(g)

("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive . . . .").

III.    DISCUSSION

        Klemons raises two objections to the ALJ's decision.  First, Klemons argues that the ALJ

failed to properly weigh the medical opinion evidence in the record when he gave greater weight

to Dr. Goldstein's opinion than Dr. Najjar's opinion.  See Pl. Mem. at 15-19.  Second, Klemons

maintains that the ALJ did not properly evaluate Klemons' subjective statements.  See id. at 20-

21.  As noted, Klemons was determined to be disabled for the period from March 18, 2016

through June 6, 2017, and so Klemons does not dispute the ALJ's determination as to that time

period.  Additionally, Klemons does not dispute that he began engaging in substantial gainful

activity in February 2019, and so he does not seek a finding that he was disabled after that date.

See R. 20-21; Pl. Mem. at 21 ("Mr. Klemons is currently alleging disability only until February

2019."). Accordingly, Klemons' arguments center on the ALJ's determination that Klemons was not disabled from June 7, 2017 to February 1, 2019.

    A.    <u>Whether the ALJ Properly Weighed the Medical Evidence</u>

Klemons argues that the ALJ improperly weighed the medical evidence in determining that he medically improved beginning June 7, 2017. <u>See</u> Pl. Mem. at 15. Klemons specifically faults the ALJ for giving "substantial weight" to non-examining physician Dr. Goldstein's opinion while declining to give substantial weight to the opinions of Dr. Najjar and N.P. Kallman, each of whom treated Klemons. <u>See id.</u> at 16-17. Klemons argues that the ALJ improperly emphasized notations in Klemons' records describing him as "doing well" or "stable," and highlights that Dr. Goldstein acknowledged that his opinion was incomplete. <u>Id.</u> at 17-19.

Under the so-called "treating physician" rule, the ALJ must generally give "more weight to medical opinions" from a claimant's "treating sources" — as defined in the regulations — when determining if the claimant is disabled. <u>See</u> 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[2] Treating sources, which includes some professionals other than physicians, <u>see</u> 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2), "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The Second Circuit has summarized the deference that must be accorded the opinion of a "treating source" as follows:

> Social Security Administration regulations, as well as our precedent, mandate specific procedures that an ALJ must follow in determining the appropriate

---

[2] Although the SSA has eliminated the treating physician rule for applications filed on or after March 27, 2017, <u>see</u>, <u>e.g.</u>, <u>Conetta v. Berryhill</u>, 365 F. Supp. 3d 383, 394 n.5 (S.D.N.Y. 2019), Klemons application was filed before that date, <u>see</u> R. 233.

weight to assign a treating physician's opinion.  First, the ALJ must decide
whether the opinion is entitled to controlling weight.  "[T]he opinion of a
claimant's treating physician as to the nature and severity of [an] impairment is
given 'controlling weight' so long as it 'is well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not inconsistent with the other
substantial evidence in [the] case record.'"  Burgess, 537 F.3d at 128 (third
brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)).  Second, if the ALJ
decides the opinion is not entitled to controlling weight, it must determine how
much weight, if any, to give it.  In doing so, it must "explicitly consider" the
following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature,
and extent of treatment; (2) the amount of medical evidence supporting the
opinion; (3) the consistency of the opinion with the remaining medical evidence;
and (4) whether the physician is a specialist."  Selian[, 708 F.3d at 418] (citing
Burgess, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).  At both steps,
the ALJ must "give good reasons in [its] notice of determination or decision for the
weight [it gives the] treating source's [medical] opinion."  Halloran v. Barnhart,
362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R.
§ 404.1527(c)(2)). . . .  An ALJ's failure to "explicitly" apply the Burgess factors
when assigning weight at step two is a procedural error.  Selian, 708 F.3d at 419-
20.

Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019).  Accordingly, the Second Circuit has

stated that it will "not hesitate to remand when the Commissioner has not provided 'good

reasons' for the weight given to a treating physician[']s opinion and [it] will continue remanding

when [it] encounter[s] opinions from ALJ[s] that do not comprehensively set forth reasons for

the weight assigned to a treating physician's opinion."  Halloran, 362 F.3d at 33; accord Estrella,

925 F.3d at 96; see also Greek, 802 F.3d at 375-76.

    Nonetheless, the Commissioner is not required to give deference to a treating physician's

opinion where "the treating physician issued opinions that are not consistent with other

substantial evidence in the record, such as the opinions of other medical experts."  Halloran, 362

F.3d at 32 (citation omitted).  In fact, "the less consistent [a treating physician's] opinion is with

the record as a whole, the less weight it will be given."  Snell v. Apfel, 177 F.3d 128, 133 (2d

Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)); see also Veino v. Barnhart, 312 F.3d 578, 588

(2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to

resolve.").  Finally, a "slavish recitation of each and every factor [listed in 20 C.F.R.

§ 404.1527(c)]" is unnecessary "where the ALJ's reasoning and adherence to the regulation are

clear," Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran,

362 F.3d at 31-32), and even where the ALJ fails to explicitly apply the "Burgess factors," a

court may, after undertaking a "searching review of the record," elect to affirm the decision if

"the substance of the treating physician rule was not traversed," Estrella, 925 F.3d at 96 (quoting

Halloran, 362 F.3d at 32).

        Here, the ALJ complied with his obligations under Burgess and the relevant regulations

for examining treating physician opinions.  The ALJ reasoned that Dr. Najjar's findings — in

particular, his conclusion that Klemons could only occasionally reach and would be limited to

sitting, standing, and walking for only two hours in an eight-hour workday — were inconsistent

with Klemons' subjective statements that "he was doing well, his lymphoma was in remission

and his hydrocephalus was stable."  R. 27.  In light of the inconsistencies in Dr. Najjar's opinion,

combined with the lack of support for certain of his findings, the ALJ declined to give Dr.

Najjar's opinion substantial weight, even considering his role as Klemons' "long term treating

doctor."  Id.  Accordingly, the ALJ examined the consistency and the supportability of Dr.

Najjar's opinion, and gave consideration to the duration and nature of his treating relationship

with Klemons.  The ALJ thus fulfilled his obligation under the treating physician rule to provide

reasons for the weight he gave Dr. Najjar's opinion.

        We also find that the ALJ's decision not to accord Dr. Najjar's opinion controlling

weight was supported by substantial evidence in the record, much of which was inconsistent with

Dr. Najjar's findings.

        First, the ALJ received the testimony of Dr. Steven Goldstein, a board-certified

neurologist, R. 55, who "had the opportunity to review the entire file," R. 28.  As noted, Dr.

Goldstein opined that Klemons was "functioning well" as of his June 6, 2017 examination, R. 61, and that at the time of the hearing, Klemons could sit for 6 hours per day, up to 3 hours at a time, could stand and walk for 6 hours per day, up to 3 hours at a time, and could lift 10 pounds frequently and 20 pounds occasionally, R. 58.  Dr. Goldstein gave reasons for his conclusion based on tests and his evaluation of the record.  See R. 64-67.

In his decision, the ALJ highlighted that treatment records from Dr. Najjar and Dr. Teckie supported Dr. Goldstein's opinion that Klemons demonstrated gradual improvement in his physical ability in the months leading up to June 2017.  R. 26; see R. 1974 (finding that Klemons "is improving on current regimen").  The ALJ further noted that treatment records on or after June 7, 2017 identified only mild limitations, consistent with Dr. Goldstein's finding of gradual improvement.  R. 26.  The evidence in the record supported Dr. Goldstein's opinion and, in turn, provided substantial evidence in support of the ALJ's decision to give greater weight to Dr. Goldstein's opinion than to Dr. Najjar's opinion.  See R. 1992 (Dr. Teckie concluded that Klemons was "able to carry out work of a light or sedentary nature"); R. 2111 (Klemons reported that his "[e]nergy is good, no fatigue"); R. 2129 (Klemons reported "feeling well" and only "slightly fatigued").

Klemons argues that "opinions from non-examining medical sources are ordinarily entitled to the least amount of weight."  Pl. Mem. at 17.  Regardless, "the opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by evidence in the record," Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995); accord Suttles v. Colvin, 654 F. App'x 44, 46 (2d Cir. 2016) (no error by ALJ to give great weight to consultative examiner's opinion because it was consistent with record evidence) (summary order); Rosier v. Colvin, 586 F. App'x 756, 758 (2d Cir. 2014) (consultative examiner's opinion constitutes

substantial evidence supporting ALJ's decision to accord little weight to treating source) (summary order).

Thus, during Klemons' June 6, 2017 examination, Dr. Najjar noted that Klemons was "stable and doing well," and "continues to improve gradually in terms of short term memory and cognition." R. 1941. The lingering limitations Dr. Najjar identified were that Klemons "continue[s] to have fatigue and is prone to lightheadedness with position changes." Id. Although Dr. Najjar believed that Klemons' fatigue would limit him to working in a seated position for only 1-2 hours per day, see R. 2013, Dr. Salon in January 2017 found "no objective findings to support the fact that [Klemons] will be restricted in his ability to sit or stand," R. 2033. Furthermore, subsequent treatment notes paint a much milder picture of Klemons' level of fatigue. A March 2018 examination found that Klemons could "walk 30 blocks without issues." R. 1380. Another progress note in March 2018 reported that Klemons was "feeling well" and only "slightly fatigued." R. 2129. A November 2018 progress note from Dr. Ameri reported that Klemons' "[e]nergy is good, no fatigue [or] lethargy." R. 2111. Even prior to June 6, 2017, several nursing assessments in the record do not indicate that Klemons was experiencing fatigue. See R. 1819, 1839, 1850, 1861. Overall, these findings are inconsistent with Dr. Najjar's finding of persistent and enduring fatigue, and thus the ALJ could find that Klemons' fatigue had improved over time. Additionally, in contrast to Dr. Najjar's finding that Klemons could only occasionally use his arms for reaching, see R. 2014, the treatment notes from June 6, 2017 indicate that Klemons had normal muscle tone and strength in his upper and lower extremities, see R. 1944. Accordingly, while Klemons argues that a notation that a claimant is "doing well" cannot alone refute a claim of disability, see Pl. Mem. at 17 (citing Bauer v. Astrue, 532 F.3d 606, 609 (7th Cir. 2008), among other decisions), here there was extensive record evidence that

was inconsistent with Dr. Najjar's findings beyond such notations.  While it would have been

better if the ALJ had specifically outlined the evidence that Klemons was "doing well," an ALJ

is not required to "explicitly . . . reconcile every conflicting shred of medical testimony."

Mongeur, 722 F.2d at 1040 (quoting Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981)).

 Klemons argues that "Dr. Goldstein admitted Mr. Klemons may have some mental

deficit/fatigue but he could not determine how serious without neuropsychological testing."  Pl.

Mem. at 18.  However, this does not accord with Dr. Goldstein's hearing testimony.  Dr.

Goldstein had explained that Klemons was performing normally on all "routine clinical

neurological examination[s]," — his "orientation, attention, language, fund of knowledge,"

"concentration ability," "comprehension and reading" were all normal and intact.  R. 60.  Dr.

Goldstein then conceded that it was "still possible he may have some deficit but one would need

neuropsychological testing to tell us how much mental fatigue he'd be having."  Id.  In this

statement, Dr. Goldstein was discussing a potential non-exertional limitation, not the physical

fatigue that was the basis for the ALJ's determination that Klemons was disabled from March

2016 to June 2017.  See R. 22-23.  Klemons himself distinguished mental fatigue from physical

fatigue in his hearing testimony.  See R. 51.  In fact, Klemons was not identified as having any

limitations in mental functioning: Dr. Donina performed a psychiatric evaluation and did not

identify "any psychiatric or cognitive problems that would significantly interfere with the

claimant's ability to function on a daily basis."  See R. 2039.  Because Dr. Goldstein was

acknowledging a potential for an undetected mental limitation, not opining that there was

uncertainty as to Klemons' level of fatigue, this testimony from Dr. Goldstein does not

undermine the ALJ's decision.

Separately, the ALJ provided reasons for declining to give substantial weight to the opinion of N.P. Kallman, and these reasons were supported by substantial evidence in the record. The ALJ principally expressed disagreement with N.P. Kallman's findings because, while they relied on and incorporated Klemons' self-reported fatigue, these fatigue findings were "not consistent with the consistently normal physical examinations and objective testing."  R. 27-28. This conclusion was supported by substantial evidence in the record, as set forth above.  In any event, as a nurse practitioner, N.P. Kallman was not an acceptable medical source for purposes of the treating physician rule, as Klemons filed his disability claim prior to March 27, 2017.  See R. 233; 20 C.F.R. §§ 404.1502, 404.1527(a)(1).

Klemons argues that the ALJ highlighted evidence tending to minimize the extent of his symptoms while ignoring evidence that supported a finding of disability, contending that the ALJ could not just "pick and choose" only evidence supporting his conclusion.  See Pl. Reply at 3 (quoting Sutherland v. Barnhart, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004)).  Although it is true that an ALJ may not simply ignore evidence that does not support his decision, the ALJ set forth the basis for the different weights he accorded different evidence in the record.  That evidence painted conflicting pictures of the extent of Klemons' physical and mental limitations, and the ALJ explicitly resolved those conflicts.  An ALJ is free to, and often must, "choose between properly submitted medical opinions" in reaching his decision.  Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) (quoting Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)).  Klemons has not shown that the ALJ here did anything other than reach a reasoned and well-explained conclusion based on conflicting medical evidence in the record.

B.      Whether the ALJ Properly Evaluated Klemons' Subjective Statements

Klemons next argues that the ALJ erred in evaluating Klemons' subjective statements as to his disability.  See Pl. Mem. at 20-21.  Klemons argues that the evidence the ALJ relied on to conclude that his statements were not consistent with the record was not relevant to that determination.  Id. at 21.  Klemons maintains that the ALJ improperly relied on examination findings that Klemons was "doing well" or "normal" to reject his subjective symptoms.  Id. Klemons also contends that the ALJ wrongly relied on an April 2019 cognitive assessment, which he maintains is not relevant to the question of whether Klemons was disabled between June 2017 and February 2019.  Id.

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question."  Genier, 606 F.3d at 49 (internal citations omitted).  Instead, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  Id.  "If the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints."  Aponte, 728 F.2d at 591 (internal citations omitted); accord Them v. Colvin, 2015 WL 10635499, at *13 (S.D.N.Y. Dec. 22, 2015); Vargas v. Astrue, 2011 WL 2946371, at *15 (S.D.N.Y. July 20, 2011); see also 42 U.S.C. § 405(g).

Although Klemons argues that the ALJ was obligated to examine his credibility in terms of seven factors set forth in SSA regulations,[3] see Pl. Mem. at 20-21, an ALJ is not obligated to

---

[3] 20 C.F.R. § 404.1529(c)(3) requires an ALJ performing an assessment of a claimant's credibility to consider:
    (i) Your daily activities;
    (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
    (iii) Precipitating and aggravating factors;

place findings on the record as to each of these factors.  Instead, an ALJ's decision will be upheld where "the ALJ thoroughly explained his credibility determination and the record evidence permits us to glean the rationale of the ALJ's decision." Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order); accord Rutkowski v. Astrue, 368 F. App'x 226, 230 (2d Cir. 2010) (summary order) (upholding credibility determination where ALJ identified inconsistencies in testimony and identified substantial evidence in support of his decision).

Here, as noted, the ALJ found that after June 6, 2017, Klemons' "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Klemons'] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 26.  At the hearing, Klemons testified that his fatigue was so limiting that it required him to take frequent naps, he often could not do household chores, and he would have his energy "tank" unpredictably.  See R. 46-49.  The ALJ specifically declined to credit Klemons' testimony regarding the extent of his fatigue, see R. 26-28, the same issue which caused the ALJ to not accord significant weight to Dr. Najjar's opinion. In explaining his decision not to rely on Klemons' subjective complaints, the ALJ cited the fact that "his physical examinations indicated normal results."  R. 28.  As set forth above, we conclude that substantial evidence in the record supported the ALJ's determination that

---

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Klemons' fatigue was not so limiting as to preclude light work, and so we similarly find that substantial evidence supported the ALJ's credibility determination.

Klemons contends that the ALJ could not find his testimony not credible simply because it was not substantiated by "objective medical evidence," Pl. Mem. at 21 (citing 20 C.F.R. § 404.1529(c)(2)), but this was not the ALJ's rationale for rejecting his testimony. The ALJ cited to Dr. Goldstein's opinion as a basis for his conclusions about Klemons' ability to function. Thus, the ALJ did not simply rely on the absence of objective, affirmative proof.

Klemons also argues that the ALJ improperly relied on the fact that Klemons "consistently noted he was doing well." Pl. Mem. at 21; see R. 28. Even if we regarded such statements as too generic or vague to have much evidentiary significance, we believe the ALJ's decision was supported by other substantial evidence in the record, as discussed above.

The ALJ concluded that Klemons' treatment records after June 7, 2017 provided further reason to discount his subjective statements. The ALJ highlighted an April 8, 2019 examination at which Klemons reported worsening fatigue, dizziness, and headaches, but his physical examination was normal and his Montreal Cognitive Assessment score was "nearly perfect." R. 28. These findings were made two months after Klemons had begun working at levels that constituted substantial gainful activity. Id. This, the ALJ reasoned, showed that Klemons' subjective reports of fatigue were "not clinically correlated" with his ability to work or with objective measures of well-being such as the Montreal Cognitive Assessment. See id. Klemons argues that it was improper for the ALJ to rely on these findings from April 2019, as Klemons only claimed disability until February 2019. See Pl. Mem. at 21. However, the ALJ was making a broader point that Klemons' reports of fatigue were not always supported by clinical findings and did not always prevent him from performing work, diminishing his credibility. It was not

erroneous for the ALJ to consider this evidence from outside the claimed disability period given that it was used for this limited purpose.

In sum, the ALJ gave reasons for his decision not to credit Klemons' subjective complaints, and to the extent not explicitly stated by the ALJ, "the record evidence permits us to glean the rationale of the ALJ's decision." <u>Cichocki</u>, 534 F. App'x at 76. Accordingly, we discern no error in the ALJ's credibility determination.

IV.     <u>CONCLUSION</u>

For the foregoing reasons, Klemons' motion for judgment on the pleadings (Docket # 26) is denied, and the Commissioner's cross motion for judgment on the pleadings (Docket # 33) is granted.

SO ORDERED.

Dated:  September 7, 2022
        New York, New York


GABRIEL W. GORENSTEIN
United States Magistrate Judge